UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-706-H

J&L MARKETING, INC.                                             PLAINTIFF

V.

THOMAS A. JOSEPH, and
TEAM ADVANTAGE, INC.                                           DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, J&L Marketing, Inc., filed suit against Defendants, Thomas Joseph and Team Advantage Inc., alleging copyright infringement. Defendants answered and asserted counterclaims of tortious interference with contract and prospective business advantage, defamation, and punitive damages. Plaintiff moved to dismiss all counterclaims. For the reasons that follow, the Court will sustain Plaintiff's motion.

I.

Plaintiff is a Kentucky corporation that provides automotive marketing services for automobile dealerships. Plaintiff's founder, Scott Joseph ("Scott"), is the brother of Defendant Thomas Joseph ("Tom"). As part of its services, Plaintiff creates solicitation letters designed to encourage customers to attend sales events at particular automobile dealerships. According to Plaintiff, many of the solicitation letters are copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, *et seq.* Tom began working for Plaintiff as a business growth strategist in 1994. In 1998, his status changed from an employee to an independent contractor. As an employee and independent contractor, Tom had access to and regularly used Plaintiff's copyrighted marketing letters. In May of 2009, after eleven years as an independent contractor

and after his relationship with Scott had deteriorated, Tom quit and formed his own company, Team Advantage, Inc. ("Team Advantage"). Team Advantage is a direct competitor to Plaintiff in the automotive marketing business.

On July 14, 2010, Plaintiff filed a complaint against Defendants in Jefferson Circuit Court. The complaint alleges that Tom breached the non-solicitation provision of his Independent Contractor Agreement. The complaint also contains an allegation of tortious interference with contract. Upon filing the complaint, Plaintiff requested a temporary restraining order to enjoin Defendants from contacting any of its customers and from using or disclosing any of its business information. The Circuit Court granted Plaintiff's request for the TRO on the same day that Plaintiff filed the complaint. Subsequently, Defendants moved to dissolve the TRO, a motion that the Circuit Court denied. In October of 2010, the Court conducted a lengthy evidentiary hearing and on November 15, 2010, it dissolved the TRO because the non-solicitation provision had expired according to its own terms. The underlying litigation remains pending in the Circuit Court.

Although the Circuit Court has yet to decide the merits of Plaintiff's breach of contract and tortious interference claims, it did make some important findings of fact and law following the evidentiary hearing. Contrary to Tom's claim that he never signed the 1998 agreement, Plaintiff produced a signed agreement as well as a handwriting expert who testified that the signature on it belonged to Tom. In addition, witnesses testified that Tom was aware of the non-solicitation provision and that he attempted to conceal possible breaches of the provision. Another witness testified that Tom received copies of Plaintiff's solicitation letters from one of Plaintiff's employees, and that Tom instructed her to remove Plaintiff's logo from them. The

same witness added that Tom contacted several of Plaintiff's customers. In its November opinion, the Circuit Court said, "[c]learly, [Plaintiff's] contractual rights have been compromised," and "[i]t is blatantly obvious that [Plaintiff] would have been entitled to injunctive relief, had the non-solicitation/non-disclosure agreement not expired under its own terms."

On November 18, 2010, Plaintiff filed suit against Defendants in this Court asserting twenty-two counts of copyright infringement in violation of the Copyright Act. Defendants answered, making several defenses as well as counterclaims of tortious interference with contract and prospective business advantage, defamation, and punitive damages. Plaintiff moved to dismiss all counterclaims.[1]

## II.

In the context of a motion to dismiss, the Court must "view the complaint in the light most favorable to the plaintiff [and] treat all well-pleaded allegations therein as true." *Amini v. Oberlin College*, 259 F.3d 493, 497 (6th Cir. 2001). While only a "short and plain statement of the claim" is required, *Fed. R. Civ. P. 8(a)(2)*, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and quotation omitted). "[E]ven though a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief about the

---

[1] Plaintiff also moved for partial judgment on the pleadings regarding certain admissions that Defendants made in their answer. Defendants explained that it made the admissions inadvertently, and they moved to amend their answer in order to correct the error. Plaintiff does not object to Defendants' motion to amend. Therefore, the Court will sustain Defendants' motion to amend and deny Plaintiff's motion for partial judgment on the pleadings as moot.

speculative level.'" *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556, 570).

The Court will address Defendants' tortious interference and defamation claims separately.

## III.

As to the tortious interference claim, the Court first must determine whether it has supplemental jurisdiction over the claim. The Court has original jurisdiction over this dispute because Plaintiff's claims arise under a federal statute. *28 U.S.C. § 1331*. Defendants' counterclaims are state-law claims, and because the parties are not diverse, the Court does not have original jurisdiction over those claims. However, 28 U.S.C. § 1367(a) confers supplemental jurisdiction over all other claims that are so related to the federal claim "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "Thus, an inquiry whether supplemental jurisdiction exists over state-law claims need only examine whether the state claims are so closely related to the federal claim that the state claims form part of the same Article III case or controversy as the federal claim." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 581 (6th Cir. 2009). The Sixth Circuit has described § 1367(a) as a "sweeping grant of supplemental jurisdiction." *Olden v. Lafarge Corp.*, 383 F.3d 495, 504 (6th Cir. 2004).

Defendants' tortious interference claim appears unrelated to Plaintiff's copyright claims. At the center of Plaintiff's claims are its copyrighted materials and Defendants' allegedly

unauthorized use of those materials; the focus of Defendants' tortious interference claim is Tom Joseph's Independent Contractor Agreement and Plaintiff's allegedly wrongful reliance on the agreement in order to obtain a state court order. Although both Plaintiff's and Defendants' claims concern Tom's actions following his departure from J&L Marketing, they appear to stand separate and apart from one another. While the Court recognizes that the Sixth Circuit has interpreted the scope of a federal district court's supplemental jurisdiction broadly, any relationship between the federal copyright claims and the state tortious interference claim is far too tangential to meet the relatedness requirement of 28 U.S.C. § 1367(a).

Even assuming that it has supplemental jurisdiction, the Court would decline to exercise it's supplemental jurisdiction under 28 U.S.C. § 1367(c)(4). That section states, "The district courts may decline to exercise supplemental jurisdiction over a claim...if in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *28 U.S.C. § 1367(c)(4)*. This case presents an exceptional set of circumstances such that the Court's refusal to exercise jurisdiction is appropriate.

## A.

First, the Court seriously questions whether Defendant's have stated a viable tortious interference claim. Plaintiff argues that filing a lawsuit cannot form the basis of a tortious interference claim and, under the particular circumstances of this case, the Court agrees. In support of their claim, Defendants' point out that the Kentucky Court of Appeals has held that "[t]he institution or threatened institution of a groundless lawsuit" may satisfy the requirement that a claimant show malicious or significantly wrongful conduct on the part of the tortfeasor in establishing a tortious interference claim. *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC,*

182 S.W.3d 529, 534 (Ky. Ct. App. 2005). Unlike Defendants, however, the party claiming tortious interference in the *Harrodsburg* case was not a party to the allegedly groundless suit. In the eyes of the Court, this difference presents a huge obstacle for Defendants.

As a party to the allegedly meritless suit, the more appropriate tort claim is for wrongful use of civil proceedings, not tortious interference. The *Harrodsburg* court held that it is perfectly acceptable for a tortious interference claimant to allege that a tortfeasor wrongfully or maliciously filed suit against a third party as an intentional act of interference. The *Harrodsburg* holding does not extend to cases where the tortious interference claimant was a party to the allegedly meritless suit. Rather, the claimant has a more appropriate remedy in wrongful use of civil proceedings. Wrongful use of civil proceedings provides relief for those maliciously subjected to civil proceedings without probable cause, *Morgan v. Botts*, No. 2009-SC-000515-TG, 2011 Ky. LEXIS 55, *38 (Ky. Apr. 21, 2011), which is essentially what Defendants allege. In particular, Defendants claim that Plaintiff filed suit in state court "despite its knowledge that Defendant Tom Joseph had been released from any restrictive covenants which might have otherwise applied to Tom Joseph subsequent to his employment by Plaintiff." If Defendants truly believe that Plaintiff filed suit in state court with knowledge that the suit has no merit, their remedy is for wrongful use of civil proceedings in Kentucky state court.

Furthermore, by requiring Defendants to pursue a wrongful use of civil proceedings claim, the Court provides protection for Plaintiff's right to free access to the courts. In addition, wrongful use of civil proceedings is a more pointed attack on Plaintiff's allegedly wrongful conduct. Wrongful use of civil proceedings focuses on a plaintiff's filing of a meritless lawsuit, while tortious interference focuses on the damage-causing act of interference. Here, the act that

6

actually injured Defendants is the state court's grant of the TRO. In other words, under the circumstances of this case, the tortious interference claim is more of an attack on the state court order while a wrongful use of civil proceedings claim is a direct attack against Plaintiff.

B.

Second, the compulsory counterclaim rule probably bars Defendants' tortious interference claim. *Ky. R. Civ. P. 13.01*. Kentucky courts have not established a test for determining whether a counterclaim is compulsory. However, the Sixth Circuit has established a test for Federal Rule of Civil Procedure 13(a), which has language mirroring that of the Kentucky Rule. The "logical relation test" requires courts to consider: 1) whether the claims present substantially similar legal, factual, and evidentiary questions; and 2) whether requiring that the two claims be heard together would serve the interests of judicial economy and efficiency. *See Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380, 383 (6th Cir. 1984); *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991).

Plaintiff's breach of contract and tortious interference claims and Defendants' tortious interference claim present substantially similar legal, factual, and evidentiary questions. All three claims revolve around the non-compete provision in the 1998 Independent Contractor Agreement. Plaintiff's claims assume the existence of a signed agreement, and Plaintiff will attempt to rebut Defendants' claim by arguing that it pursued the enforcement of the agreement in good faith. In determining the merits of the claims, both the Jefferson Circuit Court and this Court will likely have to decide the same issues, including but not limited to: whether Tom actually signed the Independent Contractor Agreement; the scope of the agreement; whether Scott released Tom from the agreement; and, in the event that Tom did not sign the agreement,

whether there are any other applicable non-compete restrictions? Furthermore, requiring the claims to be heard together in Jefferson Circuit Court would serve the interests of judicial economy and efficiency. The Jefferson Circuit Court is already in the process of trying to answer these questions.

## C.

Third, the tortious interference claim has the look of appellate review of a state court judgment, which the *Rooker-Feldman* doctrine prohibits. *See generally, Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005) (providing an analysis of the doctrine's history and scope). The doctrine prohibits "the losing party in state court" from subsequently filing suit in federal court and "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."[2] *Exxon Mobil*, 125 S. Ct. at 1526 (2005). At the same time, if a state-court loser "'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party..., then there is jurisdiction.'" *Id*. at 1527 (quoting *Gash Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). The theory behind the doctrine is that 28 U.S.C. § 1257 provides the Supreme Court with exclusive jurisdiction over appeals of state court judgments.

The Sixth Circuit has interpreted the scope of the *Rooker-Feldman* doctrine somewhat narrowly. In *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), a federal plaintiff alleged, among other things, that the current and former administrators of a deceased property owner's

---

[2] Although the state court action is still pending, the Court considers Defendants' to be a losing party in state court because the injunction decision that is the source of the tortious interference claim was final before the federal suit began. This distinction is important because if the dispute regarding the temporary injunction was still pending, Kentucky preclusion principles would apply instead of *Rooker-Feldman*. *Exxon Mobil*, 125 S. Ct. at 1527. In addition, Moore's Federal Practice suggests that *Rooker-Feldman* applies to interlocutory state-court rulings as well as rulings by lower state courts. *Moore's Federal Practice*, § 133.30[3][c][ii] (2011).

estate committed various frauds and misrepresentations in state court in order to seize the property in violation of the United States Constitution. *Braverman*, 451 F.3d at 392. In *Todd v. Weltman, Weinberg, & Reis, Co, L.P.A.*, 434 F.3d 432 (6th Cir. 2006), a federal plaintiff alleged that the defendant debt collector lied in state court in order to collect a debt in violation of the Fair Debt Collection Practices Act. *Todd*, 434 F.3d at 434. In both cases, the Sixth Circuit held that the *Rooker-Feldman* doctrine did not prohibit the federal court plaintiffs from raising their claims in federal court because the claims were independent and did not assert an injury caused by state court judgments. The Court determined that the claims were independent because they did not allege that the state court judgments "in and of themselves violate the federal Constitution or federal law." *Braverman*, 452 F.3d at 392. Instead, the claims challenged the way in which the defendants procured state court judgments.

A principal difference between this case and those cases is that, in applying *Rooker-Feldman* here, this Court would be divesting itself of supplemental jurisdiction, not subject matter jurisdiction. Understandably, in *Braverman* and *Todd*, the Sixth Circuit narrowly defined the class of federal claimants seeking review of state court judgments. Here, where the threatened jurisdiction is supplemental in nature, the class of federal claimants defined as seeking review of state court judgments need not be so narrow. Moreover, Defendants' tortious interference claim intertwines Plaintiff's actions and the state court judgment in such a way that it is very difficult for the Court to consider the claim as truly independent. The Court's supplemental jurisdiction and the questionable independence of the tortious interference claim make it conceivable that *Rooker-Feldman* could deprive this Court of its jurisdiction over the claim.

D.

Finally, the Court believes that the procedural history of this case is another exceptional circumstance that warrants declining supplemental jurisdiction. It is likely that Defendants' choice to pursue their tortious interference claim in federal court is an attempt to avoid an unfavorable ruling in state court. It is clear from the Jefferson Circuit Court's findings of fact and law in its November 15, 2010, opinion that it strongly believes in the merits of Plaintiff's case. Instead of facing an uphill battle in establishing their claim in state court, Defendants filed a tortious interference counterclaim in federal court that is in not related to Plaintiff's copyright claims in any real legal way. Given the legal, factual, and evidentiary similarities between Plaintiff's state claims and Defendant's tortious interference claim, the proper place for Defendants to raise and resolve the claim is in state court, not here under the Court's supplemental jurisdiction.

IV.

The Court cannot be sure whether it should exercise supplemental jurisdiction over Defendants' defamation counterclaim because it is so vaguely stated. Defendants' answer simply states that Plaintiff "has published to third parties on multiple occasions false statements concerning Defendants and have intentionally caused harm to Defendants," and that Plaintiff's agents or employees willfully and maliciously made defamatory statements about Defendants which tended to injure the good reputation and business of Defendants. In a case with similarly generic defamation allegations, this Court said that the claim was "'a formulaic recitation of the elements of a cause of action' and, therefore, cannot survive the motion to dismiss." *Puglise v. Regency Nursing, LLC*, No. 3:09-CV-457, 2009 U.S. Dist. LEXIS 87566, *3 (W.D. Ky. Sept. 23,

2009) (citing *Twombly*, 550 U.S. at 555).  The Court went on to say that a defamation claim offering nothing about the contents of the statements, when the statements were made or to whom they were made "are insufficient 'to raise a right to relief above the speculative level.'" *Id.* at *4 (citing *Assoc. of Cleveland Firefighters*, 502 F.3d at 548).

Defendants attempt to assert a counterclaim for defamation falls far short of the specificity required for such claims.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record